**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

AJS PETROLEUM, INC.

      Plaintiff

v.                                                                                              Civil Case No. L-11-1085

UNITED STATES OF AMERICA

      Defendant

o0o
**MEMORANDUM**

The Food and Nutrition Service of the United States Department of Agriculture permanently disqualified Plaintiff, the operator of an Exxon gas station in Aberdeen, Maryland, from participating in the Supplemental Nutrition Assistance Program on the basis of food stamp trafficking. Plaintiff filed this suit, seeking de novo judicial review of the Agency's decision. Now pending before the Court is Defendant's Motion to Dismiss or for Summary Judgment. Docket No. 8. The issues have been comprehensively briefed; a hearing is unnecessary. See Local Rule 105.6 (D. Md. 2011). For the reasons stated herein, the Court will, by separate Order of even date, GRANT the Defendant's Motion construed as a Motion for Summary Judgment.

**I.     BACKGROUND**

    **a.   Overview of the Supplemental Nutritional Assistance Program**

The Supplemental Nutritional Assistance Program ("SNAP"), commonly referred to as the Food Stamp Program, provides eligible households with food stamp allotments that may be used to purchase qualifying food items at authorized retail stores. See Food Stamp Act of 1977, 7 U.S.C. § 2011 et seq. The program is operated by the United States Department of Agriculture ("USDA") and administered by the USDA's Food and Nutritional Service ("FNS"). See 7

C.F.R. § 271.3.  Benefits are provided by FNS through monthly credits to recipients' electronic benefit transfer ("EBT") cards, which operate similarly to debit or ATM cards.  See 7 U.S.C. § 2016(j)(1)(A).  Benefit recipients use their EBT cards to purchase food items from retailers authorized to participate in the program, and the EBT transactions are electronically monitored by FNS.  See 7 C.F.R. § 278.6(a).

Retail food stores may accept food stamp benefits as payment only for eligible items.  See 7 C.F.R. § 271.2 (defining "eligible foods" as, in pertinent part, "[a]ny food or food product intended for human consumption except alcoholic beverages, tobacco, and hot foods and hot food products prepared for immediate consumption").  Moreover, retailers are strictly prohibited from food stamp "trafficking," which includes "the buying or selling of coupons, ATP cards or other benefit instruments for cash or consideration other than eligible food."  Id.  FNS is authorized to disqualify from SNAP retailers found to be involved in food stamp trafficking or otherwise in violation of the Food Stamp Act.  7 U.S.C. § 2021(a); 7 C.F.R. § 278.6.

In determining whether disqualification is warranted, FNS investigators may rely on evidence that includes "facts established through on-site investigations, inconsistent redemption data, [or] evidence obtained through a transaction report under an electronic benefit transfer system."  7 U.S.C. § 2021(a)(2); 7 C.F.R. § 278.6(a).  When an authorized retailer is found to have trafficked in food stamps, permanent disqualification is required unless "substantial evidence" indicates that the store has "an effective policy and program . . . to prevent violations."  7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(e)(1); see also Idias v. United States, 359 F.3d 695, 697 (4th Cir. 2004).[1]

---

[1] Usually, the decision to disqualify is "held in abeyance" pending the reviewing officer's final determination.  In cases of permanent disqualification for trafficking, however, the disqualification is effective immediately upon the retailer's receiving notice of disqualification.  7 C.F.R. § 279.4(a) (emphasis added).

When an investigation results in a decision to disqualify a retailer from participation in SNAP, the store owner may request administrative review. 7 U.S.C. § 2023(a); 7 C.F.R. § 279.1. Once the review is complete, the reviewing officer renders a final agency decision, which takes effect thirty days after notice of the decision has been delivered to the retailer. 7 C.F.R. § 279.5. After receiving notice, the retailer may seek <u>de novo</u> judicial review of the administrative action in state or federal court. 7 U.S.C. § 2023(a)(13); 7 C.F.R. § 279.7.

### b. AJS's Participation in and Disqualification from SNAP

AJS is a Maryland corporation that owns and operates Aberdeen Exxon, a gas station and retail convenience food shop. The Exxon opened for business in September 2009 and was authorized to participate in SNAP in November of that year. Def.'s Mot. to Dismiss or for Summ. J. 8, Docket No. 8-1. Sometime before October 2010, FNS flagged the Exxon for suspicious SNAP benefit redemptions and opened an investigation. David Haines, the USDA Officer-in-Charge for the Mid-Atlantic Compliance Operations Center, analyzed the store's EBT transactions for the months of October, November, and December 2010. After also scrutinizing the Exxon's operations and comparing its SNAP transactions to those of a nearby competitor, Haines concluded that the transactions were "unreasonable" and could "only be explained as illegal trafficking." Administrative Record ("AR") 42.[2]

Haines sent a Charge Letter to AJS on February 1, 2011, detailing the suspicious transactions, explaining the results of the investigation, and informing the store that it was being considered for permanent disqualification from SNAP on the basis of food stamp trafficking. AR 96–105. On February 10th, AJS submitted a formal response to the Haines's allegations, offering several explanations for the suspicious EBT data and acknowledging that it had no cash

---

[2] Due to its length and the limitations of the Court's electronic filing system, a redacted version of the Administrative Record was filed in paper format only. <u>See</u> Notice of Filing Administrative Record, Docket No. 7.

register receipts from October through December of 2010 with which to definitively rebut the charge of trafficking. AR 106–151. After meeting with Haines, AJS provided supplemental information, including invoices and other financial data, and proffered additional explanations for the allegedly irregular transactions. AR 152–258. Nevertheless, after a comprehensive review of all available information, Haines concluded that food stamp trafficking had occurred and recommended permanent disqualification. AR 258–289. AJS received notice of the Agency's decision to disqualify on February 26th. AR 290–92. On March 2nd, AJS formally requested administrative review. AR 293–427. On April 5th, Administrative Review Officer Douglas Perry issued a final agency decision upholding Haines's finding of trafficking and his recommendation of permanent disqualification. See AR 435–448. On April 26th, AJS filed its Complaint in this Court seeking judicial review. Docket No. 1.

## II.   STANDARDS OF REVIEW

### a. Motion to Dismiss

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).

When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against

him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." Id. (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

### b. Motion for Summary Judgment

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). Hearsay statements or conclusory statements with no

evidentiary basis cannot support or defeat a motion for summary judgment.  See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995).

### III.   ANALYSIS

#### a.   Judicial Review Under the Food Stamp Act

##### i.   Motion to Dismiss

The Government contends that the Complaint should be dismissed because it contains no factual support to contradict the administrative finding of trafficking and because its conclusory allegations are too threadbare to state a claim.  These arguments, though perhaps logical on their face, disregard the reality that the Food Stamp Act provides for de novo judicial review of "the validity of the questioned administrative agency action in issue."  7 U.S.C. § 2023(a)(15).  Given this procedural context, all that AJS must do to state a claim is put forth sufficient facts to show that it is entitled to exercise this explicit right of review.  See Cross v. United States, 512 F.2d 1212, 1217 (4th Cir. 1975) (en banc) (concluding that a retailer who has been permanently disqualified from participating in the Food Stamp Program on the basis of wrongdoing must be afforded procedural due process, which cannot be fully provided at the administrative level).

The Government has neither challenged AJS's standing nor disputed this Court's jurisdiction.  It does not and cannot contend that AJS failed to comply with any administrative review procedures required to obtain judicial review.[3]  See generally 7 C.F.R. § 279, Subpart A (regulating administrative review).  Because the Government has not articulated any valid grounds for challenging AJS's right to seek judicial review, and because the Complaint states sufficient facts to indicate that AJS has a plausible claim entitling it to such review, the instant

---

[3] Under 7 C.F.R. § 279.7(a), an aggrieved party must file a complaint seeking judicial review within 30 days of receiving notice of the USDA's final decision.  As stated above, AJS received notice of the agency's final decision on April 5, 2011, and filed this suit on April 26th.

Motion is DENIED insofar as the Government seeks dismissal. Accordingly, it will be analyzed below as a motion for summary judgment.

### ii. Motion for Summary Judgment

In the context of the Food Stamp Act, de novo review means that the retailer bears the ultimate burden of proving by a preponderance of the evidence that the alleged violations did not occur.[4] See, e.g., Fells v. United States, 627 F.3d 1250, 1253 (7th Cir. 2010); Kim v. United States, 121 F.3d 1269, 1272 (9th Cir. 1997); Warren v. United States, 932 F.2d 582, 586 (6th Cir. 1991); Redmond v. United States, 507 F.2d 1007, 1012 (5th Cir. 1975); Rodriguez Grocery & Deli v. U.S. Dept. of Agric. Food and Nutrition Serv., Civ. No. WDQ-10-1794, 2011 WL 1838290 at *3 (D. Md. May 12, 2011); 2341 E. Fayette St., Inc. v. United States, Civ. No. JFM-05-974, 2005 WL 2373696 at *1 (D. Md. Sept. 26, 2005).

If the retailer falls short, meaning that the violations are established, the retailer can argue that the sanctions imposed by the Agency were arbitrary and capricious. Cross, 512 F.2d at 1218. In the instant case, the Court must focus on the first issue because, as stated above, even one trafficking violation can support permanent disqualification from the program. See 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(e)(1); see also Idias, 359 F.3d at 697.

In seeking to disprove the violations, AJS is not limited to the factual record before the agency, but may rely on other evidence as well. See, e.g., Kim, 121 F.3d at 1272 ("[T]the plaintiff may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency.") (internal quotations and citations omitted). AJS has,

---

[4] To survive summary judgment, AJS must provide sufficiently specific facts to enable a reasonable fact-finder to determine that trafficking did not occur. See Young Choi Inc. v. United States, 639 F. Supp. 2d 1169, 1177–78 (D. Hawaii 2009) ("Although the nonmoving party does not need to demonstrate by a preponderance of the evidence that the violations in question did not occur, it must produce at least some significant probative evidence tending to support the complaint.") (internal quotations and citations omitted).

therefore, included a Rule 56(d) affidavit in its Opposition, seeking an unredacted administrative record, information linking the apparently irregular EBT transactions to the households that made them, and extensive discovery related to the alleged violations.  See Hesselbacher Affidavit, Pl.'s Opp. Ex. D.  In the normal case, the Court will not consider a motion for summary judgment until discovery has been conducted.  See FED. R. CIV. P. 56(d); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986).  In this case, however, the administrative record and other evidence appended to the parties' briefs provide a sufficient factual foundation.

The administrative record includes the evidence developed by the agency, including EBT transaction records, Officer Haines's report, and photographs.  The record also includes the evidence that AJS submitted to the Agency in opposition to the trafficking charges.  In its Opposition brief, AJS has submitted further evidence in the form of photographs, affidavits, and business records.  Because additional discovery would not change the factual landscape in this case, an analysis under the summary judgment standard is appropriate.  In other words, AJS must produce sufficient evidence from which a finder of fact could conclude that the violations did not occur.  See note 4, supra.

### b.  Whether AJS Was Engaged in Food Stamp Trafficking

The Government argues that AJS has not and cannot rebut the USDA's finding of food stamp trafficking. Following his three-month investigation, Officer-in-Charge Haines concluded that an inference of trafficking was warranted based on three specific irregularities in the EBT data.  First, the data showed "rapid transactions occurring too frequently to be credible."  Def.'s Reply 6, Docket No. 14.  Swift back-to-back SNAP transactions occurred

twice during the investigation.[5]  Second, the data showed ten instances of "repetitive transactions made by the same SNAP account."  Def.'s Mot. 23.  One household, for example, made eleven separate SNAP purchases at the Aberdeen Exxon within an eighteen-hour period.  AR 42, 100–01.  Third, the data showed a number of large SNAP transactions, including three that were deemed "excessively large," given the Exxon's modest inventory.  Def.'s Reply 12.  Three hundred and ten purchases exceeded $31; the "excessive" purchases were in the amounts of $91.15, $76.19, and $66.95.  AR 102–03.

AJS challenges the Government's reliance on EBT data as an improper evidentiary foundation for summary judgment, and notes that the Government has offered no direct evidence of trafficking.  Pl.'s Opp. 5, 7.  This argument is without merit.  See, e.g., Idias, 359 F.3d 695 (affirming summary judgment for the Government in a Food Stamp Act violation case on the basis of EBT data); Young Choi Inc., 639 F. Supp. 2d at 1178 ("FNS does not need to provide evidence that a store was caught 'red-handed' engaging in a food stamp violation in the summary judgment stage.  The court may grant the government's motion for summary judgment based on evidence from transaction reports.") (internal quotations and citations omitted); Rodriguez Grocery & Deli, 2011 WL 1838290 at *3 ("Trafficking may be shown by irregular patterns in a store's EBT data, even if some irregularities can be explained by legitimate customer behaviors.").

The only version of the administrative record available to AJS has been redacted, limiting its ability to identify the households associated with the allegedly irregular EBT transactions and explain the nature of the suspect purchases.  AJS admits, however, that it has no cash register records from October–December 2010, as it was the store's policy to dispose of such

---

[5] On October 12, 2010, a transaction in the amount of $31.37, made at 8:41:03 a.m., was followed by a $46.23 transaction made by the same household thirty seconds later.  AR 42, 99.  On December 21st, a $17.43 purchase made at 4:17:29 p.m. was followed, again thirty seconds later, by a $40.00 purchase on the same EBT card.  Id.

records every two weeks.  Pl.'s Opp. 13.  Accordingly, AJS relies on post hoc rationalizations to explain why, for instance, one household might make two apparently irregular SNAP transactions in a short period of time, but provides no specific facts that might serve as an evidentiary basis.  See Pl.'s Opp. 14.  The only documentary evidence AJS offers to support its position is cash register receipts from February 2011, two months after the conclusion of Haines's investigation.  See Pl.'s Resp. 15–16.  AJS simply asserts, based on employee affidavits, that the types of sales flagged by the Agency as irregular were not uncommon.  See, e.g., Pl.'s Opp. 16–17.

In addition to the EBT data, the Government points to a variety of other evidentiary sources relied on by Haines to reach the conclusion that AJS was involved in food stamp trafficking.  An in-store inspection showed the Exxon to be a "modest-sized gas station convenience store" that lacked the selection and competitive pricing of a larger grocery store.  See AR 13–39.  Although AJS argues that "extensive renovations" in March of 2010 greatly expanded the store's inventory, Pl.'s Opp. 10, the record does not bear this out.  Photographs from before and after the expansion indicate that the store's size and food offerings were virtually unchanged.  Compare AR 13–39 with Pl.'s Opp. Ex. A-3.  A three-month SNAP redemption total of $44,211, therefore, is unusually high, especially when compared with much smaller redemptions claimed by the Aberdeen Getty, another convenience store located nearby.[6]

---

[6] Although the Getty offers similar food products and has roughly the same square footage as the Exxon, its SNAP business was only a fraction of the Exxon's.  Def.'s Reply 8; A.R. 83.  Relying on photographs of the Getty showing it to be less attractive and modernized than the Exxon, AJS argues that the comparison is inapt.  See Pl.'s Opp. Exs. A-1 and A-9.  Even if the Exxon's SNAP business was legitimately greater than the Getty's, however, this does not remove the strong inference of food stamp trafficking created by the suspect EBT transactions and Haines's findings.  The question is not whether it is within the realm of possibility that food stamp trafficking did not occur.  The question is whether AJS has provided a sufficient factual basis to permit a reasonable fact-finder to conclude that the specific irregularities listed in the EBT reports did not constitute trafficking.  See Young Choi Inc., 639 F. Supp. 2d at 1178 ("Generalized and somewhat more specific assertions may not show disputed issues of material fact to rebut the specific statements and observations of investigators.").

Most persuasively, Haines's investigation revealed that AJS's SNAP benefit redemptions exceeded its wholesale food purchases. In December 2010, for instance, AJS purchased only $9,935.25 in wholesale foodstuffs, but claimed $16,869.02 in redemptions. AR 264. According to Haines's report, the Exxon "[did] not have the stock to justify the amount of monthly redemptions." AR 264. AJS's blanket response to these data—"there is no direct correlation between what is bought and what is sold in a particular month"—is illogical and unfounded. See Pl.'s Opp. 19. Moreover, although AJS apparently disputes the Government's calculations of its eligible food purchases for December 2010 and the three-month investigatory period, its only basis for doing so is an internal spreadsheet containing information that is not supported by receipts or other verifiable sources. See Shazahad Affidavit ¶ 17, Pl.'s Opp. Exs. A-1 and A-10.

In sum, in attempting to refute the Government's fact-based data, AJS offers only generalized, hypothetical explanations about its sales and business operations during the investigation period. AJS has fallen far short of the specificity required to defeat summary judgment. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). For the reasons stated above, the Court concludes that there exists no material dispute of fact and, therefore, that the Government is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons the Court will, by separate Order of even date, GRANT the Defendant's Motion construed as a Motion for Summary Judgment. See Docket No. 11.

Dated this 1st day of March, 2012.

_____/s/_____
Benson Everett Legg
United States District Judge